UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--o0o--

| | |
|---|---|
| UNITED STATES OF AMERICA, )| Case No. 2:15-cr-00233-JAM |
| ) | |
| Plaintiff, ) | Sacramento, California |
| ) | Wednesday, December 30, 2015 |
| vs. ) | 10:00 A.M. |
| ) | |
| SCOTT ORTON, ) | Hearing re:  detention. |
| ) | |
| Defendant. ) | |
| _____ ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:                    BRIAN A. FOGERTY
                                  U.S. Attorney's Office
                                  501 I Street, Suite 10-100
                                  Sacramento, CA   95814
                                  (916) 554-2700

For Defendant:                    MICHAEL PETRIK for SEAN RIORDAN
                                  Federal Defender's Office
                                  801 I Street, 3rd Floor
                                  Sacramento, CA   95814
                                  (916) 498-5700

Court Recorder:                   (UNMONITORED)
                                  U.S. District Court
                                  501 I Street, Suite 4-200
                                  Sacramento, CA   95814
                                  (916) 930-4193

Transcription Service:            Petrilla Reporting &
                                     Transcription
                                  5002 - 61st Street
                                  Sacramento, CA   95820
                                  (916) 455-3887

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

ii

INDEX

PAGE

Victim's Impact Statement                                            11


WITNESS INDEX

FOR PLAINTIFF:              DIRECT   CROSS   REDIRECT   RECROSS

Catherine Dyer              F- 8   P- 15


LEGEND:   F = Fogerty
          P = Petrik



EXHIBIT INDEX

FOR PLAINTIFF:                               FOR I.D.   RECEIVED


FOR DEFENDANT:

1

1    <u>SACRAMENTO, CALIFORNIA, WED., DECEMBER 30, 2015, 10:00 A.M.</u>

2

3        (Call to order of the Court.)

4            THE COURT:  Good morning, everyone.

5            MR. PETRIK:  Good morning, Your Honor.

6            MR. FOGERTY:  Good morning, Your Honor.  Brian

7    Fogerty on behalf of the United States.

8            THE COURT:  Mr. Fogerty, good morning.

9            THE CLERK:  Your Honor, calling Criminal Case 15-233-

10   JAM, United States v. Scott Orton.  This matter's on for

11   detention hearing.

12           MR. FOGERTY:  Good morning again, Your Honor.  Brian

13   Fogerty on behalf of the United States.

14           THE COURT:  And good morning again.

15           MR. PETRIK:  Good morning, Your Honor.  Michael

16   Petrik, Office of the Federal Defender, for Mr. Orton who's

17   present before the Court.  He is in -- well, he's on bond.

18   He's on O/R release from Washington.

19           THE COURT:  Well, as well as from this Court.  Good

20   morning, Mr. Petrik.  Good morning, Mr. Orton.  I did release

21   Mr. Orton on bond yesterday but subject to a review based upon

22   the government's request and representations.

23           So, Mr. Fogerty, what is the government's -- is the

24   government moving for Mr. Orton's detention?

25           MR. FOGERTY:  Yes, Your Honor.

2

1          THE COURT:  And is that based on danger?

2          MR. FOGERTY:  Yes.

3          THE COURT:  And what information is the government

4   offering in that regard?

5          MR. FOGERTY:  Well, to begin with -- and I know the

6   Court's familiar to a certain extent with this case having

7   reviewed the complaint.

8          THE COURT:  Right.

9          MR. FOGERTY:  And from yesterday's hearing.  I'll

10   just say a few things.

11          First, Mr. Orton's conduct in this --

12          THE COURT:  Well, let me interrupt you a moment --

13          MR. FOGERTY:  Yeah.

14          THE COURT:  -- because I will tell you yesterday's

15   hearing shed absolutely no light on any danger allegations.  It

16   shed light that there was a victim who would possibly like to

17   address the Court, but it wasn't ever made clear how or what

18   that dealt with danger.  So go ahead, sir.

19          MR. FOGERTY:  Sure.  Two points on that then, Your

20   Honor.  The victim in this case would like to address the

21   Court, and just to clarify one of the points from yesterday, as

22   I understand it, the victim does have a right to address the

23   Court here under the Crime Victim Rights Act 3771(a)(4).

24          And I believe her expected testimony will be relevant

25   to the Court's determination of whether Mr. Orton's continued

1    release constitutes a danger to the community in a few

2    respects.

3           One, I expect that the testimony will demonstrate

4    that she, just like the government, cannot be reasonably

5    assured that Mr. Orton will not act out upon the things that he

6    said he will do repeatedly.

7           It will also hopefully shed some light on the effect

8    that those statements have had on her and the continuing harm

9    that those would have should he -- or were he able to continue

10   to make the statements while on release.

11          And then, third, I think it would provide some

12   context for the Court in terms of the effect that these

13   statements have had on others who could be incited to commit

14   acts of violence or continue to make further threats.

15          THE COURT:  And I -- if it is the government's desire

16   and it's the victim's desire to offer testimony, I will

17   certainly hear it, but I want you and -- I want a better

18   understanding and maybe we can just get into it, which is the

19   issue is not how these threats may have impacted the victim's

20   life or how it may be inciting other people that -- for

21   statements that have been made in the past because detaining

22   Mr. Orton doesn't address past statements and there are

23   restrictions that have been and can be put in place for any

24   further statements or incitements, as well as if he does, then

25   he can be at that point found to be in violation and ordered

4

1    detained.

2         And it's no doubt that threats may impact a person's

3    life, but that doesn't necessarily address the danger

4    component, especially given that there has been some passage of

5    time since these alleged threats were made as well as the

6    passage of time since he was ordered and released in Washington

7    and here.

8         So I let you know, it's steep climb for you and the

9    witness, but if it is your desire to have the victim heard, we

10   can do so, and in some ways Mr. Petrik may feel like, well,

11   he's not quite sure similarly whether this will meet the

12   burden, but maybe it gives the defense free discovery.

13        But, Mr. Petrik, your response, sir, or we just put

14   the witness on the stand and see where we go from there, sir.

15        MR. PETRIK:  There's no reason to put her on the

16   stand under 3142(g), period.

17        THE COURT:  Well, and --

18        MR. PETRIK:  And, you know, I mean I don't know.

19   There's like -- I mean you're familiar with the complaint,

20   Judge, because you signed it and this --

21        THE COURT:  Right.

22        MR. PETRIK:  -- like -- there's a series of

23   allegations.  Nothing's happened since then.  Then -- I mean I

24   love the 302 part where the FBI interviewed the victim in

25   August and their advice to her was, well, if anything weird

5

1    happens, call 911.  And then nothing happened.

2            And then they search his house in November and they

3    interview him and no one arrests him and nothing happened.  And

4    then he gets arrested and he's in the Eastern District of

5    Washington and he appears before the Court and there are

6    restrictions and conditions of release that the Judge imposed

7    there that Pretrial Services in that district authorized and

8    that Pretrial Services in this district agreed with.

9            And nothing happened and I don't understand what

10   we're here for again.  You know, this is like -- I mean to me

11   this is a frustrating thing because I don't know what

12   Mr. Fogerty wants to do, but if a victim wants to allocute at

13   sentencing, if there is a sentencing, then that's her right.

14           But the Victim Rights Act doesn't give her a right to

15   allocute and doesn't give her the right to influence your

16   decision or any other Judge's decision on the matter of bail.

17           That is governed by 3142(g) and that's not in there.

18           THE COURT:  And the one thing I will -- have a seat,

19   Mr. Petrik.  And the one thing I will certainly tell you and

20   it's along the lines which Mr. Petrik said.

21           I am not meaning to be harsh or unsympathetic to a

22   victim, but I haven't heard you say anything, Mr. Fogerty, in

23   terms of giving a proffer as to how this is going to address a

24   danger component for the Court to consider for the detention.

25           It sounds more as if the victim really would like an

6

1   opportunity to address the Court and the government wants to

2   accommodate that, so you'd like to put on the victim, but I

3   haven't heard yet how that goes to a danger component.

4          MR. FOGERTY:  Well, I think, Your Honor, I mean -- to

5   kind of jump ahead, I think what the -- what I would suggest is

6   that we allow the victim to testify and the Court can make that

7   determination and weigh the evidence under the Bail Reform Act

8   and make that decision.

9          To Mr. Petrik's point, there is statutory authority

10  for the victim's right to be heard at these proceedings.

11  That's not really in dispute here.

12         THE COURT:  All right.  What I'm going to do -- let

13  me stop --

14         MR. PETRIK:  No.  It is in dispute.

15         THE COURT:  -- you -- stop both.  I'm going to allow

16  the victim to testify.  I am going to make very clear I am not

17  going to have a full-blown mini trial on all of the

18  allegations, all things that have happened historically.

19         I want you to drill down into what makes you or --

20  the government or the victim believe that the defendant is a

21  current danger to the victim or the community and that's what

22  we're going to consider.

23         And then, Mr. Petrik, I am similarly going to limit

24  your cross-examination because I'm not going to have this

25  become a free discovery, mini trial.  I want to hear the

7

1     considerations I am to hear.  So let's go ahead and call the

2     victim.

3           MR. FOGERTY:  Understood, Your Honor, and one request

4     also.  The victim has expressed an interest in making a

5     statement to the Court as well and has a prepared written

6     statement which we can either provide or she can read, and

7     that's up to the Court.  Understood.

8           THE COURT:  You can hand me a copy of the statement.

9     I'll take a quick look and decide if we're going to deal with

10     that issue.

11           MR. PETRIK:  Well, I want -- if you're not --

12           THE COURT:  But I'm going to -- I'll let you --

13           MR. PETRIK:  I want it sworn.  If she's going to

14     provide a statement to the Court, I want it sworn under perjury

15     and entered as an exhibit.

16           THE COURT:  Let's get the victim up here.  Let's get

17     a copy of the statement to me and then we'll see.  I agree

18     with -- I understand Mr. Petrik wanting to make a record.  I

19     just want to see how long of a statement we're talking about

20     and what we're talking about here.

21           MR. FOGERTY:  Very well.  Your Honor, the government

22     calls Catherine Dyer.  I previously provided the statement to

23     Mr. Petrik.

24           MR. PETRIK:  This morning.

25           THE COURT:  All right.

Dyer - Direct                                                          8

1           MR. PETRIK:  Two minutes ago.

2           THE COURT:  All right.

3           THE CLERK:  Would you raise your right hand.

4            CATHERINE DYER, PLAINTIFF'S WITNESS, SWORN

5           THE CLERK:  Please state your name for the record and

6    spell your last name.

7           THE WITNESS:  Catherine Speers Dyer, D-y-e-r.

8                          DIRECT EXAMINATION

9    BY MR. FOGERTY:

10   Q.   Good morning, Ms. Dyer.

11   A.   Good morning.

12   Q.   Where are you employed?

13   A.   StemExpress.

14          THE COURT:  Wait -- I'm sorry.  Wait.  Let's stop a

15   moment, please.  I've just been handed the statement.  I want

16   to take a look at this.

17          MR. FOGERTY:  Sorry, Your Honor.

18      (Pause.)

19          THE COURT:  What I will do based upon Mr. Petrik's

20   request is I am going to -- if the government wishes, I am

21   going to have you just establish a basis that the witness has

22   prepared this statement, that this is her personal statement,

23   and it is true and accurate to the best of her personal

24   knowledge, information, and belief, under penalty of perjury

25   and we will make it a part of the record.

1          And then, by and large, I'm not going to have you go

2     into all of this.  I'm not going to hear about the history of

3     StemExpress.

4          I've no doubt the witness is very proud of the

5     company and no doubt that the company may have taken actions in

6     response to the perceived threat by Mr. Orton, but that doesn't

7     address the criteria of whether or not Mr. Orton is an actual

8     threat and that's what I need you to address.

9          So let's start with -- and good morning.   Thank you

10    for being here.

11         THE WITNESS:  Good morning.

12         THE COURT:  Make yourself comfortable.  You can move

13    the microphone, and again, ma'am, I do not mean to give your

14    testimony concerns, company concerns, employees short shrift,

15    but there are factors for me to consider under the Bail Reform

16    Act.

17         And so go ahead, Mr. Fogerty, with my guidance.  I'll

18    give you a certain amount of leeway, and then we'll go from

19    there.

20         MR. FOGERTY:  And, Your Honor, if I may, I don't want

21    to overstep and I don't want to go beyond what the Court is

22    willing to hear on this matter.  Just for clarification

23    purposes, you do not want to hear any further testimony on

24    Ms. Dyer's reaction to or anything she did in response to any

25    threats -- any of the statements, I should say.

1          THE COURT:  Well, let me do it this way.  I'm going

2     to take over the questioning first and then be happy to let you

3     each ask your questions.

4          Ms. Dyer, you are working for StemExpress; is that

5     correct?

6          THE WITNESS:  That's correct.

7          THE COURT:  And you founded the company?

8          THE WITNESS:  I did.

9          THE COURT:  And what is your title with StemExpress?

10         THE WITNESS:  I'm the CEO and founder.

11         THE COURT:  All right.  And you have provided a

12    two-page document called an Impact Statement in United States

13    vs. Orton and it's dated December 29th of this year; is that

14    correct?

15         THE WITNESS:  That's correct.

16         THE COURT:  Did you personally prepare this

17    statement?

18         THE WITNESS:  I did.

19         THE COURT:  And in summary, it talks about the

20    history of StemExpress, what it does, as well as your

21    company's, your personal reaction, and the other employees'

22    reactions to the alleged threat by Mr. Orton; correct?

23         THE WITNESS:  That's correct.

24         THE COURT:  And do you -- I understand you'd be

25    willing to read this entire statement to the Court today;

1   correct?

2          THE WITNESS:  Correct.

3          THE COURT:  But you adopt this statement under

4   penalty of perjury the same as if you read it.

5          THE WITNESS:  That's correct.

6          THE COURT:  All right.  Any objection, Mr. Fogerty,

7   to having this statement become a part of the court record?

8          MR. FOGERTY:  No, Your Honor.

9          THE COURT:  Mr. Petrik?

10          MR. PETRIK:  No.

11          THE COURT:  All right.  I am going to have then this

12   put in the court docket as a victim's impact statement and then

13   I want to focus -- do you have a copy of the statement with

14   you?

15          THE WITNESS:  I do.

16          THE COURT:  All right.  If you would look at the

17   fifth paragraph, talking about directly a result of Mr. Orton's

18   death threats to me and my employees and it talks about the

19   security that you and your company and employees have had to

20   employ as a result of those threats; correct?

21          THE WITNESS:  Correct.

22          THE COURT:  And it goes onto the next page as well.

23          THE WITNESS:  Um-hmm.

24          THE COURT:  Question for you:  And there's reference,

25   for example, to -- two paragraphs later -- oh, I'm sorry.  The

1  paragraph that begins on the bottom of the first page, top of

2  the second page, that there were information that someone had

3  breached the property and that morning surveillance of your

4  fence lines turned up a pile of cigarettes behind a bush on a

5  fence near my master -- your master bedroom; correct?

6            THE WITNESS:  Correct.

7            THE COURT:  Do you have any information that it was

8  Mr. Orton who had breached the property?

9            THE WITNESS:  No, I do not.

10           THE COURT:  Do you -- has Mr. Orton showed up at your

11 business in the last six months?

12           THE WITNESS:  I -- I wouldn't know if he has or

13 hasn't.

14           THE COURT:  Has Mr. Orton showed up at your home in

15 the last six months?

16           THE WITNESS:  I -- I also wouldn't know if he has or

17 hasn't.  I think that --

18           THE COURT:  Do you have any information that he has?

19           THE WITNESS:  No, but I guess I also don't have any

20 information he hasn't.  So I think that's in general some of

21 our concern, our employees' concern, our families' of our

22 employees concern is -- is we don't have any of the contrary.

23 We have a lot of circumstances of surveillance happening in the

24 middle of the night, vehicles photographing our staff through

25 windows during the middle of the night.

1          MR. PETRIK:  Objection.  Narrative.

2          THE COURT:  I'm going to let her finish.  Go ahead.

3          THE WITNESS:  So we don't have confirmation as to who

4     those people are in those circumstances.  The police have

5     chased them.  Our security teams have chased people on numerous

6     occasions, but have no verification as to who they are.

7          THE COURT:  And so what you're telling me is you

8     don't know who those people are.

9          THE WITNESS:  Correct.

10          THE COURT:  And you don't know whether those people

11     are Mr. Orton?

12          THE WITNESS:  Correct.

13          THE COURT:  And you don't know whether those people

14     were acting at the direction of Mr. Orton.

15          THE WITNESS:  I don't have proof that they were, no.

16          THE COURT:  Okay.  Mr. Fogerty, your questions for

17     the witness.

18          MR. FOGERTY:  Your Honor, I'm going to submit with

19     just -- if I may just make two quick points.

20          What we have here is an individual who has made

21     threats against various people over a significant period of

22     time culminating in very specific, explicit death threats

23     against a single individual in this district.

24          We -- the government has -- cannot be reasonably

25     assured at this point that Mr. Orton will not act out on those

1    threats in the future or that these proceedings will further

2    inflame whatever desire he has to act out on them.  And -- I'm

3    sorry, Your Honor.  I --

4            THE COURT:  No, no, no, no.  That's fine.  Go ahead.

5    I was just going to ask you -- let me interrupt you.  I

6    apologize -- and ask you a question.

7            One condition that has not been set but I am

8    wondering if it would address the government's concerns as well

9    as the victim's concerns is electronic monitoring for Mr. Orton

10   since he's in Washington.  I'm just wondering if that goes a

11   long way to address -- now, I understand that while he may be

12   inciting others, but again there are restrictions on his use of

13   the Internet, et cetera, and if there are violations, he can

14   always be brought forth.

15           But would electronic monitoring in large part address

16   the government's concerns?

17           MR. FOGERTY:  I think that would be a significant

18   step in the right direction and something that the government

19   would be wholeheartedly support.

20           THE COURT:  All right.  Anything else, sir?

21           MR. FOGERTY:  No, Your Honor.  I'll submit on that.

22           THE COURT:  Mr. Petrik, first, opportunity to

23   cross-examine the witness.

24                           CROSS-EXAMINATION

25   BY MR. PETRIK:

1    Q.   Ms. Dyer, you were interviewed by the FBI on August 13th,

2    2015; right?

3    A.   I don't have those dates in front of me.

4    Q.   You don't have those -- well, you can't remember?

5            THE COURT:  Do you remember is it approximately --

6    I'm sorry -- was it approximately then?

7            THE WITNESS:  I would say so, yes.

8            THE COURT:  Okay.

9    BY MR. PETRIK:

10   Q.   Do you not remember or do you deny it?

11   A.   Neither.  I just don't have the dates in front me.

12   Q.   Okay.  Well, then --

13   A.   I have a calendar in my purse -- in my bag if you'd like.

14   Q.   Well, let me show you something that I'm going to mark as

15   Defendant's Exhibit A.  And I will show you this and I'm going

16   to direct you to page 2 and the last paragraph on that page.

17           THE COURT:  Before you do --

18           MR. FOGERTY:  Would you --

19           THE COURT:  Mr. Petrik, could I please see what we're

20   talking --

21           MR. PETRIK:  Certainly.

22           THE COURT:  And has this been shown to the

23   government?

24           MR. PETRIK:  I got it from the government.

25           THE COURT:  All right.  Well, but have you identified

1  for the government which document you're talking about?

2            MR. PETRIK:  Bates No. 82 to 84, FBI 302 by Special

3  Agent Ruben (phonetic).

4            THE COURT:  Okay.  Here you go, Mr. Petrik.  Thank

5  you.

6  BY MR. PETRIK:

7  Q.   Will you look at the last paragraph on Bates No. page 83,

8  please?

9  A.   The one that starts off this is a former employee?

10  Q.   Yes.

11  A.   Oh, okay.

12  Q.   Now, does that refresh your recollection about what you

13  told the FBI agent on that day?

14  A.   Let's see here really quick.  Sorry.  Just so I

15  understand, are these notes from that meeting?

16  Q.   That is a recorded interview of that meeting.

17  A.   Okay.

18            THE COURT:  Well, and let's -- Mr. Petrik, I know

19  you're kind of eager to jump into this, but your question was

20  initially whether she met with the FBI on August 13th and I

21  understood the witness to say she didn't recall that date and

22  you kind of jumped, but I -- let me -- I don't think she was

23  disputing she met with the FBI.  I think it was a question of

24  whether it was that precise date or not and then you didn't ask

25  her any questions if she recalled what she said, and now you're

1    asking her if it refreshes her recollection.  So --

2          MR. PETRIK:  She said she didn't remember, so I'm

3    trying to refresh her --

4          THE WITNESS:  I said I didn't remember the specific

5    date.

6          THE COURT:  That's what I -- I think there was a

7    confusion there.

8    BY MR. PETRIK:

9    Q.   Does this help you remember the specific date, ma'am?

10   A.   The specific date, I would need to check my calendar for,

11   but if you're asking me if this was discussed when I met with

12   the FBI, yes, this was discussed.

13   Q.   All right.  And at that time, you had a discussion with

14   the FBI about who you suspected was threatening you; right?

15   A.   We had numerous discussions about threats.

16   Q.   Okay.  And you didn't single out Mr. Orton, did you?

17   A.   It was -- we had no identity of Mr. Orton at that time.

18   Q.   Well, you actually singled out a former employee of yours;

19   right?

20   A.   But we had -- Josie Whales, as listed here, is in the

21   commentary that was discussed.

22   Q.   You didn't single out Doug Stevens who was a former

23   employee of your company --

24   A.   We --

25   Q.   -- at the bottom as someone that you thought was

1   threatening you.  Is that the case?

2   A.   We -- we discussed Doug Stevens as a former employee that

3   we were concerned.

4   Q.   And that's who you singled out; right?

5   A.   Well, we have right at the top of the page, it says Josie

6   Whales from Fox Nation.  So it was part of our conversation.

7   There was a lot of things discussed.

8   Q.   You singled out Mr. Stevens; is that correct or not?

9   A.   I don't feel like it's a correct statement to say I

10  singled him out.  I said it was part of our discussion.

11  Q.   Okay.  If you want, I'll call the agent.

12  A.   Okay.

13  Q.   So what you're saying is that what the agent wrote down in

14  this official 302 is not correct?

15  A.   I have not read this whole --

16       MR. FOGERTY:  Objection, Your Honor.

17       THE WITNESS:  -- 302 and this whole document.

18       MR. FOGERTY:  This is not --

19       THE COURT:  Stop, stop.  Hold on.  Let's -- stop.  Go

20  ahead, your objection.

21       MR. FOGERTY:  Your Honor, Ms. Dyer did not write the

22  302.

23       THE WITNESS:  I've never seen it before this morning.

24       MR. FOGERTY:  It was just placed in front of her

25  right now.  And to Mr. Petrik's line of questioning, if he's

1   trying to suggest that there were other people that were

2   threatening Ms. Dyer, I don't see how that has to do with --

3           THE COURT:  Okay.  That's not -- that's more of a

4   speaking rather than an objection.  Mr. --

5           MR. PETRIK:  Oh, it has everything to do --

6           THE COURT:  Hold on.  Hold on.  I understand.

7   Mr. Petrik, is there any other area you want to cover because I

8   think that -- this doesn't address my concern.  Anything else,

9   sir, that you want to cover with this witness?

10          MR. PETRIK:  No.

11          THE COURT:  Mr. Petrik, step back.  Mr. Fogerty, any

12  other questions for Ms. Dyer?

13          MR. FOGERTY:  No, Your Honor.

14          THE COURT:  Ms. Dyer, thank you.  You can step down.

15          THE WITNESS:  Thank you.

16      (Witness excused.)

17          THE COURT:  What -- have a seat, gentlemen.  What I

18  am intending to do is this.

19          MR. PETRIK:  Well, I --

20          THE COURT:  Stop.  I'm going to let you be heard in a

21  moment.  I'm telling you this is my inclination and then I'm

22  going to let you each be heard.

23          Which is I am not going to place electronic

24  monitoring on Mr. Orton at this juncture based upon what I have

25  heard, but I am going to make clear from -- I'm going to modify

1   the travel restrictions in one regard.  Yesterday, which as I

2   said that his travel was restricted to Washington and the

3   Eastern District of California without the consent of his

4   Pretrial Services officer.

5          In fact, I'm going to restrict that to Washington and

6   then, yes, of course, he can come to the Eastern District of

7   California when necessary, but he needs to get the approval of

8   the Pretrial Services officer so there is recognition when he's

9   traveling so he doesn't feel that he can go back and forth and

10  so that if he is going back and forth without the Pretrial

11  Services officer -- you know, not for a court proceeding, then

12  the government can come back before the Court and address its

13  concerns.

14         But otherwise -- and again, I don't mean to minimize

15  Ms. Dyer's concerns, her company's, her employees, but what I

16  have to address is whether or not Mr. Orton -- there is actual

17  evidence of his being a danger to Ms. Dyer, her employees, or

18  other people, that he's acting out or has been acting out on

19  those threats.

20         Mr. Fogerty, your comments with regard to my

21  suggested modification and anticipated ruling.

22         MR. FOGERTY:  I would, again, say, Your Honor, that I

23  think electronic monitoring would be a -- the step in the right

24  direction here.  Again, there is no -- other than the Pretrial

25  Services officer finding out on his or her own that he had

1  traveled improperly to the Eastern District of California,

2  there's --

3  THE COURT:  Let me interrupt you and ask you about --

4  I'll also ask you for a proffer because we could get into also

5  the agent's -- you heard Ms. Dyer testify she has no

6  information that Mr. Orton had been to her business or on her

7  property, et cetera.

8  Do you have any information from agents or otherwise,

9  any proffer that Mr. Orton has been traveling down here in the

10  last month, showing up in Placerville businesses or otherwise?

11  MR. FOGERTY:  No, Your Honor.  Again, all I have is

12  Mr. Orton's repeated statements that he wants to come here and

13  kill the victim.

14  THE COURT:  No.  I -- again, I'm not minimizing it,

15  but that's different than if you said, yes, we have information

16  he has been coming back and forth --

17  MR. FOGERTY:  No, Your Honor.  I don't have

18  information that he has indeed acted out on his statements.

19  THE COURT:  Okay.  Now, Mr. Petrik, I know I have not

20  given you an opportunity to be heard on opening, but I thought

21  that you should know what my inclination is because I thought

22  it might impact what your comments or --

23  MR. PETRIK:  Your Honor, if you intend to order your

24  tentative ruling, we'll be fine with it.

25  THE COURT:  Okay.  Anything else, sir?

22

1          MR. PETRIK:  Not today.

2          THE COURT:  Okay.  What I am going to do -- and I

3    want to make clear to everyone, I -- and I appreciate Ms. Dyer

4    coming in.  I appreciate the statement.  I appreciate the

5    concerns.

6          And, Mr. Orton, I hope you understand the concerns

7    and that there is a very -- I don't want to overstate it, but a

8    thin leash that if you violate any of the terms I set

9    yesterday, the government is going to be back in here as quick

10   as they can saying this guy needs to go into custody for the

11   remainder of the case.

12         You understand that, sir?

13         THE DEFENDANT:  I do, Your Honor.

14         THE COURT:  So I want to reiterate that all of the

15   conditions I set yesterday remain in effect and -- but I want

16   to clarify and I'm going to modify one of those conditions,

17   which was Condition 5 where I said that your travel is

18   restricted to the Western District of Washington and the

19   Eastern District of California unless otherwise approved in

20   advance by the Pretrial Services officer.

21         In fact, your travel is restricted to the Western

22   District of Washington.  You are not permitted to travel to --

23   anywhere outside of the Western District, but certainly not to

24   the Eastern District of California without having gotten

25   approval from the Pretrial Services officer.

1        As I told you yesterday, Pretrial Services really is

2    there and trying to keep you out of trouble rather than get you

3    in trouble.  So you don't want them to be concerned or the

4    government that you've gone off the radar and then later say,

5    oh, I thought I was coming down here.  I was going to meet with

6    my lawyer.  I was gathering information.

7        No.  You talk to your Pretrial Services officer say,

8    I have a court hearing or a meeting with my attorney, here is

9    when I'm traveling, here's when I'm going to be there, you

10   know, here's where I'm planning to stay, and here's when I'm

11   heading back so they know that and it's being addressed.

12       You understand that, sir?

13       THE DEFENDANT:  I do, Your Honor.

14       THE COURT:  All right.  And otherwise, all of the

15   other conditions I have set remain in effect, including that

16   you must make all of your court appearances when ordered.  If

17   you fail to appear or if you otherwise violate the conditions,

18   then myself or another Judge could decide that it was a mistake

19   to let you out and order you into custody for the remainder of

20   the case.

21       Let me also make it clear so you have a clear

22   understanding.  Yesterday, I talked about not having any

23   contact with any of the victims or witnesses, and I made clear

24   that that includes posting things, contacting them.  I want to

25   make clear this includes not talking to other people about the

victims or witnesses other than your attorney or Pretrial
Services.

You don't want to be in a situation where the
government says he's just trying to do an end run.  He's trying
to incite other people because that will again be in violation
of what this Court intends here.  And as I talked about, you're
presumed innocent, but some of your comments and postings have
gotten you where you are today.

So you want to avoid any of those circumstances.  You
don't want to make Mr. Petrik's job any more difficult than it
is or your own situation.  Understood, sir?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  All right.  So you already have your next
court appearance which is before Judge Mendez and let's just
confirm that that is on February 9th at 9:15 a.m.

All right.  Mr. Fogerty, anything further?

MR. FOGERTY:  No, Your Honor.  Thank you.

THE COURT:  Mr. Petrik, anything further?

MR. PETRIK:  Your Honor, just with respect to housing
and travel expenses.

THE COURT:  Oh, yes, sir.  Thank you.

MR. PETRIK:  What I thought I could do is get
receipts from Mr. Orton and submit them to you with a proposed
order and, you know -- I mean I think at this -- a practical
way to do what I think at this juncture is he's going to front

1   the expenses and then maybe he can get reimbursement directly

2   either from the court or the marshals.  I don't know how this

3   is going to work, but what I thought I would do is submit those

4   items to you with a proposed order and then we could figure it

5   out on the back end.

6          THE COURT:  Would you also, before doing that, check

7   and coordinate with the marshal's office right after this

8   hearing because I am not -- am I correct the marshals

9   transported him down here for --

10         MR. PETRIK:  I think that is the case.  He received a

11  travel order that was written by Mr. Reardon and he was

12  provided funds to get down to the Eastern District of

13  California by the U.S. Marshals.

14         THE COURT:  And so my -- and then the U.S. Marshal --

15  oh, well -- here is one thing -- excuse me one moment.

16     (Pause.)

17         THE COURT:  There is an order from Judge Claire dated

18  December 15th which was to the United States Marshals that you

19  were ordered to arrange for the defendant's means of

20  noncustodial transportation or furnish the fare for such

21  transportation, et cetera, down here for the December 29th,

22  where his appearance is required as well as furnish defendant

23  with an amount of money for subsistence expenses to his

24  destination.

25         I am -- and the marshals were asking me about a

1  similar order.  So coordinate with them.  I am happy to sign an

2  order to arrange for his reimbursement of expenses while down

3  here as well as a similar order to get him back home.

4          And if you want to submit a proposed order, whatever

5  you would like to do in that regard, sir.

6          MR. PETRIK:  Okay.  I'll coordinate with the

7  marshals --

8          THE COURT:  Right.  Or if you'd rather him incur it

9  and then submit an order for reimbursement, however it works

10  best.  Okay?

11          MR. PETRIK:  Right.

12          THE COURT:  And I'm around.  Anything else,

13  Mr. Petrik?

14          MR. PETRIK:  No, thank you, Your Honor.

15          THE COURT:  All right.  Mr. Orton, good luck to you.

16  Thank you all.

17          THE DEFENDANT:  Thank you all.

18          MR. FOGERTY:  Thank you.

19     (Whereupon the hearing in the above-entitled matter was

20  adjourned at 10:31 a.m.)

21                         CERTIFICATE

22     I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the above-
23  entitled matter.

24  /s/ Mary C. Clark                    March 20, 2016
   Mary C. Clark, Transcriber
25  AAERT CERT*D-214