BENJAMIN B. WAGNER
United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

APR 19 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-00233 JAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | COURT: Hon. John A. Mendez |
| SCOTT ANTHONY ORTON, | |
| Defendant. | |

## I.    INTRODUCTION

**A.    Scope of Agreement.**

The indictment in this case charges the defendant with violation of 18 U.S.C.§ 875(c) – Interstate Threats. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.    Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                                      1

the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count One, 18 U.S.C. § 875(c) – Interstate Threats. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees the conduct to which he is pleading guilty requires mandatory restitution pursuant to 18 U.S.C. § 3663A(c)(1)(A)(i), and agrees to pay restitution to the victim for the total loss to the victim as a result of his conduct in an amount to be determined by the Court. The government estimates that the amount of restitution will be approximately $203,000. Restitution

payments shall be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

### C.   Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D.   Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E.   Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects not to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 U.S.C. § 3553, as set forth in this agreement, personally or through counsel, also

constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

F. **Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(B) and 28 U.S.C. § 2461(c). Those assets include, but are not limited to, the following: Apple MacBook Air

Laptop computer, serial number C02K602UDRV8.

The defendant agrees that the listed asset constitutes property used to facilitate a violation of 18 U.S.C. § 875(c).

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed assets.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding. The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### III. THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals/Other Charges.**

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A.

**B. Recommendations.**

    1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

    2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if

the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C.  Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

Further, other than as set forth above, the government agrees that any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to representations made to the Court by the defendant, or on his behalf, that contradict information provided by the defendant during his cooperation.

### IV.  ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Interstate Threats in violation of 18 U.S.C. § 875(c):

> First, the defendant knowingly transmitted in interstate commerce a communication containing a threat to injure Victim 1; and
>
> Second, such communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat.

The defendant fully understands the nature and elements of the crime charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is 5 years of incarceration, a fine of $250,000, a 3-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Estimated Guideline Calculation.

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office,

PLEA AGREEMENT        7

or the parties:

1. Base Offense Level: The government and the defendant estimate that the base offense level is 12 under U.S.S.G. § 2A6.1(a)(1).

2. Specific Offense Characteristic Adjustments:

    a. Defendant's offense level should be increased by 2 levels because the offense involved more than 2 threats, pursuant to U.S.S.G. § 2A6.1(b)(2).

    b. The government contends that defendant's offense level should be increased by 4 levels because the offense caused a substantial disruption of business functions or services, or a substantial expenditure of funds were required to respond to the offense, pursuant to U.S.S.G. § 2A6.1(b)(4). The defendant contends that the 4-level increase, pursuant to U.S.S.G. § 2A6.1(b)(4), does not apply.

3. Acceptance of Responsibility: See paragraph III.B.2 above

4. Criminal History: The parties agree that the defendant's criminal history will be determined by the Court.

5. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines. The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense as determined by the Court.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

PLEA AGREEMENT                                8

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and

other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 04/05/16

ASHLI SUMMER McKEIVIER
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 4/5/2016

SCOTT ANTHONY ORTON
Defendant

C.  **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:                                          BENJAMIN B. WAGNER
                                                United States Attorney

                                                /s/ Brian A. Fogerty
                                                BRIAN A. FOGERTY
                                                Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

In 2012, SCOTT ANTHONY ORTON created an account on the Fox News website nation.foxnews.com ("Fox Nation") with the user name "JoseyWhales." The Fox Nation website is administered by Fox News Network, LLC, and is accessible via the Internet in the State of Washington, the Eastern District of California, and elsewhere. The website features news articles, video clips, and links to editorial blogs. The website also allows registered users to post comments regarding the website's content. Anyone visiting the website can view the user comments. ORTON used the website, and his "JoseyWhales" user account, to transmit threats from Puyallup, Washington to an officer of Stem Express, LLC ("Stem Express) in Placerville, California.

Stem Express is a company that supplies human tissue for biomedical research. The company's headquarters is located in Placerville, California. When ORTON sent the threats at issue, the targeted officer of Stem Express ("Victim 1") resided in the Eastern District of California.

Beginning on or about July 16, 2015, at 4:21 p.m. Greenwich Mean Time, ORTON used the Internet in the State of Washington to post the following statements to a comment section on the Fox Nation website, intending that the statements would be received and read by Victim 1 in the Eastern District of California:

| Comment Created Date (GMT) | Comment[1] |
|---|---|
| July 16, 2015; 16:21 | The management of StemExpress should be taken by force and killed in the streets today. |
| July 16, 2015; 16:21 | Kill StemExpress employees. I'll pay you for it. |
| July 16, 2015; 16:22 | Stop the death of innocents. Kill the killers. |
| July 16, 2015; 16:22 | StemExpress your lives don't matter nearly as much as your deaths do. |
| July 16, 2015; 16:23 | Innocent lives matter. StemExpress employees' lives don't. |
| July 16, 2015; 16:58 | The [officer] of StemExpress is a death-profiteer. The [officer] of StemExpress should be hung by the neck using piano wire and propped up on the lawn in front of the building with a note attached... |
| July 16, 2015; 17:00 | [Victim 1 officer] StemExpress Inc. lives in Placerville CA. I'm going there. |

---

[1] The victim's name and position at StemExpress have been replaced with the terms "Victim 1" and "officer" to protect the identity of the victim.

| | |
|---|---|
| July 16, 2015; 17:01 | I'll pay ten grand to whomever beats me to [Victim 1]... |
| July 16, 2015; 17:01 | [Victim 1 officer] StemExpress Inc. must die to save the innocents. |
| July 16, 2015; 17:02 | [Victim 1] your life isn't worth squat. |
| July 16, 2015; 17:04 | [Victim 1's] life is in more danger than Trumps. I'm here. El Chapo is in Mexico. |
| July 16, 2015; 17:05 | [Victim 1] must die. End of story. If we as humanity accept her actions we're to be judged in the harshest manner possible. |
| July 16, 2015; 17:11 | I'll take care of [Victim 1] myself. |
| July 16, 2015; 17:11 | I'm going to Placerville this weekend. |
| July 16, 2015; 17:16 | [Victim 1] will have to face the souls of the babies she's bought and sold when she arrives on the other side. I'm sending her there early. |
| July 16, 2015; 17:18 | StemExpress employees you're on notice. You need to pay for what you've done. |
| July 16, 2015; 17:18 | Everyone at StemExpress should be executed on live TV. |
| July 16, 2015; 20:08 | Someone needs to double tap the [officer] of StemExpress. She lives in Placerville CA. |
| July 16, 2015; 20:20 | I think I'll take a little trip to Placerville this weekend. I hear there's some good hunting down Placerville way... |
| July 17, 2015; 14:05 | [Victim 1 officer] of StemExpress should be executed by hanging. |

When posting the foregoing statements, ORTON intended to threaten Victim 1. After posting the statements, ORTON told law enforcement agents that he used his professional experience as a copywriter to select "words that have a lot of meaning." ORTON also told law enforcement agents that he posted statements on the Fox Nation website "so they would cut like a knife."

Law enforcement agents asked ORTON to explain why he chose to post the statement "The [officer] of StemExpress is a death-profiteer. The [officer] of StemExpress should be hung by the neck using piano wire and propped up on the lawn in front of the building with a note attached..." ORTON responded that he had recently seen a documentary on Hitler and the Third Reich, and explained that the use of piano wire was their "methodology" for committing murder. ORTON stated that the use of piano wire was "a horrific thing," and that his reference to murder using piano wire was intended to "paint a mental picture with words." ORTON explained further, stating "I'm a wordsmith. That's what I do."

Law enforcement agents also inquired about ORTON's statement "I'll pay ten grand to whomever beats me to [Victim 1]..." ORTON's response was that he "was just spit-balling." When

agents asked ORTON whether he understood that his statement could be construed as a solicitation of murder for hire, ORTON responded "the way I saw it in my mind was it would be more like a fund for defense."

ORTON hoped that Victim 1's behavior would change after receiving ORTON's posts on the Fox Nation website. When he posted the foregoing statements on the Fox Nation website, ORTON knew that Victim 1 would view the statements as threats.

I have read and carefully reviewed the Factual Basis for Plea with my attorney. I agree that as it concerns my conduct it is true and correct. I also agree that if this matter proceeded to trial, the United States could establish each of the facts contained within the Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty.

Dated: 4/5/2016

SCOTT ANTHONY ORTON
Defendant